**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NORA CHAIB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-724-TWP-MJD |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

This matter is before the Court on Defendant the State of Indiana's (the "State") Motion for Summary Judgment. Plaintiff, Nora Chaib ("Ms. Chaib"), filed this action against her former employer, the Indiana Department of Correction ("IDOC"), an agency of the State alleging employment discrimination and retaliation. Specifically, Ms. Chaib alleges she was discriminated against on the basis of her sex and national origin in violation of Title VII of the Civil Rights Act of 1964. In addition, she alleges the IDOC retaliated against her after she complained about the discriminatory conduct. The State argues it is entitled to summary judgment on all of Ms. Chaib's federal claims because she has not established the necessary elements required by Title VII and her complaints amount to only petty workplace comments. Furthermore, the State contends the IDOC did not retaliate against Ms. Chaib. For the reasons stated below, the State's Motion for Summary Judgment (Dkt. 54) is **GRANTED.**

## I.  BACKGROUND

**A.    Ms. Chaib's Work History**

As the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Ms. Chaib as the non-moving

party.  Ms. Chaib was born in France.  She immigrated to the United States in 1986 and became a naturalized United States citizen in 1991. On November 12, 2008, Ms. Chaib began working as a correctional officer at Pendleton Correctional Facility ("Pendleton"), a maximum security prison. As a correctional officer, her duties included supervising offenders, securing offenders in their cells, monitoring offender work, and making sure offenders adhere to their schedules.  As required, Ms. Chaib participated in six-weeks of classroom instruction at the New Castle Correctional Facility followed by training with a field training officer, during a six-month probationary period.  Ms. Chaib received on-site training at Pendleton from various trainers, including Field Training Officer Leonard Van Dine ("Officer Van Dine").

**B.** **Ms. Chaib's Interactions with Officer Van Dine During Her Probationary Period**

In November 2008, Ms. Chaib began her six-month probationary training period with Officer Van Dine as her trainer.  Almost immediately, Officer Van Dine made sexually offensive comments to Ms. Chaib.  On one occasion, Officer Van Dine made the sexually suggestive remark that he and his wife liked to have "threesomes" and inquired if Ms. Chaib "liked threesomes" as well.  Ms. Chaib told Officer Van Dine that she did not like the way that he talked to her, and shortly thereafter, Officer Van Dine removed himself as her training officer. However, during her six-month probationary period, Ms. Chaib would still have frequent contact with Officer Van Dine in a part of the Pendleton facility known as I Complex and Officer Van Dine continued to make sexually offensive comments.  Specifically, in a second encounter, Officer Van Dine asked her "Do you [sic] nipple get hard yet?" when she was working outside in the cold weather during her shift.  Ms. Chaib also recalled a third incident with Officer Van Dine, where he asked her "do you bend over when you pick up something or do you squat?" These instances of sexual harassment occurred between November 2009 and January 2010.

2

Additionally, Ms. Chaib testified that Officer Van Dine frequently harassed her about her work performance, cursed at her and made the comment "do your fucking job."

At the time these incidents occurred, Ms. Chaib did not report Officer Van Dine's harassing conduct to her direct supervisor. Instead, she waited until July 15, 2010 when she reported her complaints regarding Officer Van Dine's offensive comments in a memorandum to Lieutenant Eric Weston ("Lt. Weston"). In response, Lt. Weston referred Ms. Chaib to the Human Resources office to file a formal complaint against Officer Van Dine. Ms. Chaib admitted that she did not follow the proper channel of command in reporting her complaint claiming that she could not locate her supervising officer at the time. After filing a formal complaint, the Human Resources department investigated the harassment claims. On July 29, 2010 the Human Resource investigator concluded that while Ms. Chaib's specific allegations could not be substantiated, the investigation did substantiate that Officer Van Dine "participate[d] in conduct unbecoming of an Officer." Additionally, the investigation substantiated unprofessional and inappropriate behavior on Ms. Chaib's part. Specifically, the investigation concluded that Ms. Chaib would occasionally threaten co-workers with harassment charges, would not accept responsibility for her actions, and would exhibit argumentative behavior when asked to perform certain tasks. As such, the Human Resources manager recommended to the assistant superintendent of operations that both Ms. Chaib and Officer Van Dine receive written reprimands for unprofessional conduct. After Officer Van Dine was reported and reprimanded, Ms. Chaib had no further contact and no further instances of sexual harassment from Officer Van Dine.

C.      **Ms. Chaib Files Multiple Complaints Alleging Harassing Behavior**

On May 11, 2009, Ms. Chaib successfully completed her six-month probationary period at Pendleton.  On September 9, 2009 she was given a letter of reprimand in lieu of a one day suspension for violation of the facility's leave policy.  While Ms. Chaib received satisfactory performance evaluations at the end of 2009, she began to receive multiple disciplinary action notices from the assistant superintendent in 2010.  In particular, on February 26, 2010, the assistant superintendent issued Ms. Chaib a disciplinary action letter for failing to follow facility procedure by leaving the shake down area without being "pat searched."  As a consequence for not taking part in the pat down search, the assistant superintendent issued Ms. Chaib a letter of reprimand in lieu of a one day suspension. Ms. Chaib received a second disciplinary action notice on March 9, 2010 for taking leave time on February 25, 2010 beyond the time she had available. On April 8, 2010, Ms. Chaib received a third disciplinary action notice from the assistant superintendent for allowing a "Red Tag" offender to roam the cell house unsecured. However, no disciplinary action was taken against Ms. Chaib for the "Red Tag" incident because after an investigation was completed, it could not be determined if the offender's cell was properly labeled.  Ms. Chaib received a fourth disciplinary action notice on May 17, 2010 as she violated a workplace policy when she unlocked a disciplinary segregation offender's cell door without first securing the offender.  As a result, the unrestrained offender assaulted another correctional officer in the immediate area.  For this incident, the assistant superintendent issued Ms. Chaib a letter of reprimand in lieu of a three day suspension.

In response to these disciplinary action notices, Ms. Chaib filed at least one appeal to the facility pursuant to workplace policy and several memorandums to Captain Taylor, a supervising officer.  *See* Pl. Dep. Ex. 6, Dkt. 78-2 at 10.  In those memorandums, Ms. Chaib claims that

4

many of the disciplinary action notices she received were a result of being poorly trained by other correctional officers or not being familiar with certain rules specific to certain areas within Pendleton. Ms. Chaib alleges she was given some of the notices of disciplinary action because she complained of discrimination. In particular, Ms. Chaib complained of discrimination on April 8, 2010 when she sent a complaint to Captain Taylor alleging that Officer Pickett had told an offender to approach her on or around April 3, 2010 and ask her "if French people shave their underarms, legs and pubic hair." *See* Pl. Ex. 9, Dkt. 78-2 at 19. After she reported the comments to Captain Taylor, Ms. Chaib had no further problems with Officer Pickett. *See* Dkt. 78-1 at 29.

On another occasion, correctional officer, David Hancock, called Ms. Chaib a bitch and told her, "Speak English. You're French. You don't speak English." *See* Dkt. 78-1 at 51:16-19. Then another correctional officer told her "If you don't like it, you should go back to France." *See* Dkt. 1 at 5. Additionally, Sergeant Cooper frequently told Ms. Chaib that she needed to speak better English and complained that she did not know her job. Ms. Chaib continued to complain to Human Resources and Captain Taylor that other correctional officers, both male and female would often use profane language in her presence, say she was lazy and occasionally they would curse and yell at her to do her job correctly in front of the offenders. Ms. Chaib believes the correctional officers would say and do these things because they did not want females to work at the cell house and because she did not fluently speak English. On August 12, 2010, in response to numerous complaints of harassment, a report was issued which stated, "an investigation into your allegations of harassment was conducted and the allegations could not be substantiated or supported, however the investigation did substantiate unprofessional conduct and inappropriate behavior on your part." On August 8, 2010, Ms. Chaib filed a Charge of

Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and an amended Charge of Discrimination was filed on October 7, 2010.

**D.      Ms. Chaib's Performance Evaluations**

On December 27, 2010, Ms. Chaib's work performance was reviewed by her supervisors for the work period between January and December 2010.  Her supervisors reported that Ms. Chaib did not meet the minimum standards of performance.  Specifically, the appraisal report indicated that Ms. Chaib failed to meet at least two performance expectation goals related to safety and security. Under IDOC policy, an employee's failure to meet any performance and expectation goal may result in the employee being placed on a work improvement plan.  In light of the substandard performance report, Ms. Chaib was placed under a 90 day work improvement plan from January 1 until April 1, 2011. In response, Ms. Chaib filed a complaint with the Indiana State Personnel Department ("Personnel Department") where she claimed her work performance appraisal was not timely and her appraisal report was incorrect. Ms. Chaib requested that her supervisor re-evaluate her and set aside the work improvement plan. Her requests were denied. Then, in March 2011, the assistant superintendent reissued a second work improvement plan for Ms. Chaib because she had not completed the first plan. Ms. Chaib disagreed with the administration of both work improvement plans and did not sign either of the plans' corresponding forms.  In addition, Ms. Chaib filed a second complaint with the Personnel Department, alleging that her employer failed to evaluate her every 30 days and failed to meet with her once a month, as required under the work improvement plan.

In April 2011, Ms. Chaib requested a transfer to the Correctional Industrial Facility ("CIF") at Pendleton, a facility which housed less serious offenders.  The interview panel issued a recommendation "for hire" for the position of correctional officer trainee.  However, Ms.

Chaib's transfer was denied by the superintendent, and the CIF hired seven other individuals, including two women, for the positions.  Ms. Chaib claims the hired workers had less experience than she had for the positions.

In July 2011, Ms. Chaib was ordered to work in a section of Pendleton referred to as OSD Level 1.  While working in this area, she encountered "odors she was physically allergic to" and became ill and passed out.  Ms. Chaib was treated in the infirmary and later assigned back to the area which had the unpleasant odor.  After she had a nose bleed, she was allowed a permanent change of location.

## E.   Ms. Chaib Resigns from Her Position as a Correctional Officer

On April 23, 2011, Ms. Chaib was exiting one of the dining halls in the facility when she passed by an offender who proceeded to grab her buttocks.  Immediately, Ms. Chaib turned around, identified the offender, cuffed him and placed him in a holding cell.  Thereafter, Ms. Chaib filed a conduct report describing the incident.  She described that the offender "grabbed her buttocks" which constituted nonconsensual contact of a sexual nature against a staff person. *See* Dkt. 77-3 at 16.  Ms. Chaib filed a written report of conduct regarding the offender's actions stating the offender grabbed her buttocks and the offender was charged with violation of Code 204, a Class B offense for "Abusive Sexual Contact Against Staff[1]."  During the investigation of the incident, the offender was confined to the segregation unit for two days.  Ms. Chaib believes the investigation and punishment were inadequate as the offender was released back into general population after being found guilty of a lesser charge, violation of Code 302 "Sexual Gestures," a Class C offense.  Thereafter, Ms. Chaib became stressed over the situation, fearful for her

---

[1] In her deposition (Dkt. 78-1 at 31) Ms. Chaib testified the offender put his finger "inside my pants—like through my pants, through my pants grabbed me, and I felt his hand inside me", however in her written statement and report given at the time the incident occurred, she indicates only that the offender "grabbed my buttocks".

safety and found it difficult to perform her normal duties.  In May 2011, Ms. Chaib applied for leave under the Family Medical Leave Act ("FMLA") citing stress disorder, anxiety, and depression.  On July 29, 2011, while still on leave, Ms. Chaib tendered a two week notice of resignation to her employer and officially resigned from the IDOC.  On October 18, 2011, she filed a second Charge of Discrimination with the EEOC.  Additional facts are added below as needed.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts

is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.   DISCUSSION

Ms. Chaib seeks to recover damages under Title VII, 42 U.S.C. § 2000e, on the basis of sex and national origin discrimination and retaliation.  Specifically, she alleges that employees of the State intentionally discriminated against her because she is female and of French origin.  Ms. Chaib alleges the constant discriminatory acts she was exposed to while working for the State contributed to the formation of a hostile work environment that led to her constructive discharge in violation of Title VII.  And she alleges the State retaliated against her for engaging in a statutorily protected activity when she complained about the discrimination.  The Court will address each of these claims in turn.

## A.      The State's Evidentiary Objections

As an initial matter, the Court will address the State's objections to a number of Ms. Chaib's designations and exhibits.  To begin, the State argues the designated exhibits attached to Ms. Chaib's response brief should be disregarded because many were not actually introduced or used at any deposition during litigation.  In addition, the State objected to several of Ms. Chaib's remaining exhibits on the grounds that they contain "an amalgam of hearsay, speculation, and irrelevant information".  *See* Defs. Reply Br., Dkt. 80; *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999) (affirming the lower court's ruling excluding an affidavit when the affidavit included hearsay, speculation, and scant foundation).

First, the State objects to the six depositions designated by Ms. Chaib as evidence arguing that she did not provide specific descriptions or page numbers of these depositions and, as such, the evidence should be disregarded.  The State asserts that because Ms. Chaib did not identify

with particularity the relevant portions of each deposition, the Court should disregard her evidence and use its statement of undisputed material facts. *See Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). The Court disagrees. As the non-movant, Ms. Chaib must respond to the State's motion with evidence setting forth specific facts in affidavits, depositions, answers to interrogatories or admissions to establish a genuine triable issue. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). Here, Ms. Chaib has presented numerous depositions from various employees within Pendleton in an effort to establish that a genuine issue of material fact exists that would preclude summary judgment. While Ms. Chaib did not particularly specify certain sections of her deposition, the Court declines the State's invitation to disregard portions of Ms. Chaib's designated evidence in favor of their undisputed material facts. *See Woodruff v. Wilson*, 484 F. Supp. 2d 876, 879 (S.D. Ind. 2007). As such, the State's objection regarding Ms. Chaib's designated deposition evidence is overruled.

Second, the State objects to several exhibits submitted by Ms. Chaib in opposition to the motion for summary judgment. Specifically, the State objects to paragraphs of Treddia Crouch's and Diane Ripberger's affidavits arguing the paragraphs contain hearsay, speculation, and irrelevant information. After reviewing the affidavits, the Court agrees that portions of the affidavits do, in fact, contain hearsay and speculation. Accordingly, the Court will not consider statements or references incorporated in either Ms. Crouch's or Ms. Ripberger's affidavits that are not admissible under the Federal Rules of Evidence. Therefore, the Court sustains the State's objections regarding Ms. Crouch's and Ms. Ripberger's affidavits.

**B.    Motion to Strike Ms. Chaib's Surreply**

Finally, the State objects to portions of Ms. Chaib's surreply and has moved to strike it (Dkt. 82) on the basis that portions of the surreply exceed the scope permitted by Southern

District of Indiana Local Rule 56.1(d). The State argues that Ms. Chaib has presented no new evidence but instead the surreply is a merely a rehash of arguments previously made or waived and she has mistakenly characterized arguments of the State as "argumentative" objections. Although the Court always tries to allow litigants a full and fair opportunity to respond to arguments made by their adversary, including allowing surreplies, *see e.g.*, *Pike v Caldera*, 188 F.R.D. 519, 535-36 (S.D. Ind. 1999), some portions of the surreply are not allowed under the local rules.  The Court agrees with the State that the surreply is limited to new evidence and objections; therefore the State's Motion to Strike Plaintiff's Surreply (Dkt. 82) is **GRANTED in part**.  The Court will consider Ms. Chaib's surreply only to the extent consistent with Local Rule 56-1(d).

## C.       Title VII Discrimination Claims

In a Title VII discrimination suit, a plaintiff alleging national origin or sex discrimination may show discrimination in one of two ways: either (1) through the "direct" method, by presenting direct and/or circumstantial evidence on the issue of discriminatory intent, or (2) by relying on the "indirect," burden shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004).  "Direct evidence is evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption…stated differently, direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Hossack v. Floor Covering Associates of Joliet, Inc*., 492 F.3d 853,861 (7th Cir. 2007).  Direct evidence of a defendant admitting discrimination is rare, so most cases are proven by circumstantial evidence. "Circumstantial evidence, unlike direct evidence,

need not directly demonstrate discriminatory intent, but rather it 'allows a jury to infer intentional discrimination by the decision maker' from suspicious words or actions." *Id*. at 862.

In this case, Ms. Chaib has presented no direct evidence and insufficient circumstantial evidence to support her contention that the State discriminated against her because of her sex or national origin. As stated previously, the Court has sustained the objection to hearsay, speculation and other evidence not admissible under the federal rules of evidence.   The remaining designations fail to establish a genuine issue of material fact utilizing the direct method; therefore Ms. Chaib must proceed under the indirect method.

To establish a *prima facie* case of sex or national origin discrimination under the indirect method, the plaintiff must demonstrate that: (1) she is a member of the protected class; (2) her performance met her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001).   Once the *prima facie* case is established, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 886. If the defendant is successful in rebutting the plaintiff's *prima facie* case with a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to establish the reason proffered by the defendant was pretextual. *Id.* "The employer's explanation can be foolish or trivial or even baseless so long as the company honestly believed in the reasons it offered for the adverse employment action." *Wyninger*, 361 F.3d at 979.   As a female of French origin, Ms. Chaib can establish the first element of a *prima facie* case as she is a member of a protected class.   Next, the Court will discuss the third and fourth elements of the Ms. Chaib's *prima facie* case because they are dispositive on this issue.

Ms. Chaib argues the State's discrimination based on her being a female and of French origin had an adverse effect on the terms and conditions of her employment in violation of Title VII. In response, the State asserts that Ms. Chaib cannot establish either of her Title VII discrimination claims because she did not suffer an adverse employment action and she has failed to identify a similar comparator. Ms. Chaib counters the State's assertion that she did not suffer an adverse employment action by directing the Court to her reprimands, bad evaluations, and challenging assignments. Specifically, she argues that the reprimands, bad evaluations, and challenging assignments when combined together constituted an adverse employment action because they impeded her ability to transfer to CIF. *See Twisdale v. Snow*, 325 F.3d 950, 953 (7th Cir. 2003) (noting that an adverse employment action may be established by depriving an employee of the opportunity to improve her career). Furthermore, she contends that the State's decision to hire less qualified individuals for the CIF position instead of her is further evidence of its discriminatory intent. The Court disagrees.

Title VII does not explicitly define "adverse employment action" but includes the limitation or classification of an employee in a manner that deprives the employee of opportunities or "otherwise adversely affect[s] his status as an employee." 42 U.S.C. §§ 2000e–2(a)(1)–(2). A material adverse employment action has been found with termination of employment, demotion, reduction in pay or benefits, significantly reduced job responsibilities or "other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir.1993). Ms. Chaib has not sufficiently demonstrated that she suffered an adverse employment action because the transfer position she was denied from filling was essentially identical to her former correctional position. In *Grayson v. City of Chi.*, 317 F.3d 745 (7th Cir. 2003), an African American carpenter sued the City of Chicago

under Title VII and the Age Discrimination in Employment Act when he was rejected for a promotion, which was received by three younger white carpenters with less experience. *Id.* at 747. The Seventh Circuit in holding that the plaintiff failed to demonstrate his *prima facie* case for his failure to promote claim concluded that the plaintiff did not suffer a materially adverse employment action because the promotion position was essentially identical to his current position. *Id.* at 750. Similar to *Grayson*, Ms. Chaib's correctional officer position at Pendleton was essentially equivalent to the correctional officer trainee position at CIF, and Ms. Chaib has not produced any evidence to suggest the positions were not equivalent.

Further, when viewing the facts in the light most favorable to Ms. Chaib, the reprimands and the poor performance evaluations she received did not constitute adverse employment actions. *See Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (declining to broaden the definition of adverse employment action to include reprimands that were not accompanied by a tangible job consequence). The Seventh Circuit has repeatedly held that negative performance evaluations alone do not constitute adverse employment action. *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996). Likewise, Ms. Chaib's brief assignment to an area where she complained of bad odors does not equal a cognizable action because after she became ill, Ms. Chaib was transferred from the OSD unit and she does not allege that her salary or duties were affected by the position. A temporary undesirable assignment is not materially adverse where title salary and duties are unaffected. See *Hobbs v. City of Chicago*, 573 F.3d 454, 463 (7th Cir. 2009). Accordingly, the Court concludes that Ms. Chaib has failed to establish the third prong of her sex discrimination *prima facie* case.

Additionally, under the indirect method Ms. Chaib must identify similarly situated employees not in the protected class who were treated more favorably. With respect to this

prong, the Seventh Circuit articulated that the similarly situated analysis is a "flexible, common sense examination of all relevant factors." *Coleman v. Donahoe*, 667 F.835, 846 (7th Cir. 2012). While similarly situated employees must be "directly comparable" to the plaintiff "in all material aspects," they need not be identical in every conceivable way. *Id.* (quoting *Raymond v. Ameritech*, 442 F.3d 600, 610-11 (7th Cir. 2006)). In regards to the common factors, there must be enough factors "to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Id.* at 847. In general, the Seventh Circuit has articulated that "the plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Id*.

Even under this flexible and common sense analysis, Ms. Chaib has not sufficiently identified a similarly situated employee outside the protected class that was treated more favorably than her. Ms. Chaib argues the seven individuals hired by the CIF are similarly situated and thus legitimate comparators. However, in reviewing the factors, it becomes apparent that the individuals selected for the CIF positions were sufficiently different from Ms. Chaib. At the time Ms. Chaib applied for the transfer to CIF, her recent work performance appraisal report indicated that she did not meet the minimum performance standards and she was already participating in her second 90-day work improvement plan, after failing to improve during the first installment of the plan. Because none of the other individuals selected for the CIF position has similar performance issues, they cannot be treated as valid comparators. Thus, the Court concludes that Ms. Chaib has failed to satisfy the fourth prong of her *prima facie* case. Since Ms. Chaib cannot establish either the third or fourth prong of her *prima facie* case, she

cannot prevail on either of her Title VII discrimination claims under the indirect method. Accordingly, the Court concludes that the State is entitled to summary judgment on Ms. Chaib's disparate treatment claims on the basis of sex and national origin.[2]

**D.      Hostile Work Environment Claims**

Ms. Chaib also contends that she was subjected to a hostile work environment on account of her sex and national origin.  An employer is prohibited from requiring employees to work in a discriminatory hostile or abusive environment.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Velez v. City of Chi.*, 442 F.3d 1043, 1047 (7th Cir 2006).  At the same time, not all workplace unpleasantries give rise to liability under federal civil rights laws, which do not guarantee a perfect work environment. *Vore v. Indiana Bell Telephone Co., Inc.,* 32 F.3d 1161, 1162 (7th Cir.1994)**.** The Court will address these two claims in turn:

**1.      Sex Harassment Claim**

To survive a summary judgment motion on her hostile work environment claim based on sex, Ms. Chaib needs to establish that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her sex; (3) the conduct was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile atmosphere; and (4) there is a basis for employer liability. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007). Additionally, to satisfy the third element, Ms. Chaib must demonstrate that her co-worker's behavior was both objectively and subjectively abusive.  *Id.* (citing *Rhodes v Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004)).  Moreover, an objectively hostile environment is one which a reasonable person would find hostile or abusive.  *Harris*, 510 U.S. at 21.  In

---

[2] Assuming a *prima facie* case is established, the burden of production shifts to the defendant to provide a legitimate, non-discriminatory reason for its actions. *Stutler v. Illinois Dep't of Corr.,* 263 F.3d 698, 702 (7th Cir. 2001). Although some of the disciplinary actions against Ms. Chaib are disputed, the State's reasons for the disciplinary actions are supported by legitimate non-discriminatory reasoning and Ms. Chaib has not shown pretext.

determining whether a plaintiff meets this standard, courts consider all the circumstances, including the severity of the allegedly discriminatory conduct, its frequency, whether it's physically threatening or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance.  *Id.* at 23. With respect to sexual harassment, the issue of whether the work environment is hostile "turns on whether the alleged harassment occurred because of the sex of the complainant." *Haugerud v. Amery School District,* 259 F.3d 678, 692 (7th Cir.2001).

While Ms. Chaib has presented sufficient evidence to demonstrate that she received unwelcome harassment based on her sex, the sex-based conduct directed at Ms. Chaib was not objectively severe or pervasive.  Viewing the record in the light most favorable to Ms. Chaib, Officer Van Dine made three inappropriate comments to Ms. Chaib that were sexual in nature including his comment about "threesomes", whether her nipples were hard, and if she likes to bend over or squat.  Beyond these isolated comments, Officer Van Dine never physically touched or threatened Ms. Chaib in any way.  Further, even if Ms. Chaib could establish that the sexual comments from Officer Van Dine were objectively severe or pervasive, she would still not survive summary judgment on this issue because there is no basis for employer liability.  "An employer is liable for a hostile work environment claim if the plaintiff's supervisor created the hostile work environment, or if a co-worker created the hostile work environment and the employer was negligent either in discovering or remedying the harassment." *Velez*, 442 F.3d at 1047 (citing *Mason v. S. Ill. Univ.*, 233 F.3d 1036, 1043 (7th Cir. 2000)).  The State argues that Ms. Chaib has not demonstrated that any of the individuals involved with making the sex-based comments were supervisors.  Here, Officer Van Dine did not have the authority of a supervisor with respect to his position at Pendleton or in his working relationship with Ms. Chaib.  See

17

*Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998) (stating that the authority of a supervisor primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee). Thus, Ms. Chaib must establish employer liability based on a co-worker created hostile work environment. As such, Ms. Chaib must proceed under a negligence theory and present "competent evidence that [her employer] was negligent either in discovering or remedying the harassment directed at her." *Phelan v. Cook Cnty.*, 463 F.3d 773, 784 (7th Cir. 2006) (quoting *Rhodes*, 359 F.3d at 506).

With regard to remedying the harassment, Ms. Chaib has not set forth sufficient evidence to establish a genuine issue of material fact with respect to the State's duty to investigate and take remedial action when presented with an allegation of harassment. The designated evidence shows that once Ms. Chaib filed a complaint with Lieutenant Weston the State satisfied its duty by launching an immediate investigation. The State subsequently reprimanded Officer Van Dine for unprofessional behavior in regards to his comments. And, Ms. Chaib confirmed in her deposition testimony that she no longer received offensive comments from Officer Van Dine after the investigation concluded. In fact, Ms. Chaib testified that once she reported Officer Van Dine to supervisors and the Human Resource department and he was reprimanded, she did not work with or see him again. Thus, even if Officer Van Dine's conduct was actionable, by taking prompt remedial actions to remedy the situation after she complained, the State satisfied its obligations under Title VII.

Next, Ms. Chaib argues the State failed to satisfy its obligations when the offender that touched her buttocks was insufficiently disciplined. In this matter, the State launched an immediate investigation after Ms. Chaib filed a conduct report and put the State on notice that an offender had assaulted her in the dining hall. A hearing was held and the offender was found in

violation of a lesser violation. Ms. Chaib contends that the investigation was insufficient because after being held in the segregation unit for two days, the offender was released back into general population. The Seventh Circuit, however, has articulated that "Title VII does not require that an employer's responses to a plaintiff's complaints…successfully prevent [] subsequent harassment." *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 954 (7th Cir 2005). Instead, the employer's response must be reasonably calculated to prevent the harassment from recurring. *Id.* The State's responses to Ms. Chaib's complaints regarding sexual harassment were reasonably likely to prevent the harassment from recurring. As such, the Court concludes that Ms. Chaib has not satisfied the third and fourth elements of her hostile work environment claim based on sex discrimination.

### 2.    National Origin Harassment Claim

As set forth above, the elements of a hostile work environment claim based on national origin are similar to the elements required for a claim based on sex. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (stating that a plaintiff must establish that (1) she was subjected to unwelcome harassment; (2) the harassment was based on her national origin; (3) the harassment was severe and pervasive enough to alter the conditions of her environment and create a hostile environment; and (4) there is a basis for employer liability. In her Complaint, Ms. Chaib says she experienced national origin discrimination when that an offender asked her "if French people shave their underarms, legs and pubic hair" and the offender indicated he asked the question at the direction of a correctional officer. Further, some correctional officers told Ms. Chaib to "speak English", "speak better English", and "If you don't like it, you should go back to France." Additionally, Ms. Chaib says her co-workers would sometimes make fun of her accent over the communication radio. Assuming the correctional

officers directed each of these comments towards Ms. Chaib, these comments, by themselves, are insufficient as a matter of law to support a claim for national origin discrimination. *See Andonissamy*, 547 F.3d at 848 (finding that comments directed at plaintiff were insufficient to support his national origin discrimination claim). While insensitive, these comments were not threatening, abusive or made with the intention of harassing Ms. Chaib about her heritage. Ms. Chaib admits in her deposition that sometimes people do not understand her French accent and may ask her to repeat herself. (Dkt. 55-2 at 15.) And, this is not a situation where Ms. Chaib was subjected to racial or ethnic epithets or overt displays of hostility. In *Cerros v Steel Tech., Inc.,* 288 F.3d1040, 1046-47 (7th Cir. 2002), Mr. Cerros was found to have been subjected to a hostile work environment as he was subjected to racial remarks and symbols such as "Go Back to Mexico," "Tony Cerros is a spic," "KKK" and "White Power". Additionally, when Mr. Cerros complained of slashed tires, his complaints of harassment to management were not investigated. In contrast, in *Aguilera v. Village of Hazel Crest,* 234 F.Supp.2d 840, 847–48 (N.D.Ill.2002), the criticism of an employee's communication skills in his performance evaluation and four derogatory ethnic remarks by co-workers were insufficient to constitute a finding of hostile work environment. Ms. Chaib's situation is more closely related to the circumstances in *Aguiler*a. Ms. Chaib has not established that the harassing comments made to her based on her national origin were severe and pervasive enough to alter the conditions of her environment and create a hostile environment.

Even assuming *arguendo* that Ms. Cahib has established the first three elements of her national origin claim, she has failed to demonstrate the existence of employer liability as the State sufficiently responded to her claims of harassment once reported.

Finally, Ms. Chaib says other correctional officers, both male and female, cursed at her and frequently made comments that she did not know her job, that she was lazy, and after she submitted her notice of resignation, IDOC supervisors sent an email communication indicating they were not sorry to see her go. These sporadic comments, while inappropriate and unprofessional, do not rise to the level of creating an objectively hostile work environment under Title VII. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 841 (7th Cir. 2009) ("Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment."). *See Racicot v. Wal-Mart Stores, Inc.,* 414 F.3d 675, 678 (7th Cir. 2005) (vulgar language and curses directed at plaintiff, yelling at plaintiff, and isolated comments about older women in the workplace do not create a hostile work environment). And importantly, Ms. Chaib has not shown that the comments from co-workers regarding her work ethic and work performance were related to either her gender or national origin.  Accordingly, the State is entitled to summary judgment on Ms. Chaib's hostile work environment claims.

**E.      Retaliation**

Ms. Chaib also argues that she was retaliated against by the State because she complained about the sexual harassment and discrimination due to her French origin. Ms. Chaib states she was retaliated against by not being trained adequately, being labeled a snitch and called lazy. Further, after being sexually assaulted by a prisoner and then being exposed to the assaulting prisoner in the general population, she was in fear for her life and stressed to the point that she could not work and had to take leave (s*ee* Dkt. 81 at 5).  Under the direct method, a plaintiff must present evidence of the following: (1) a statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006).  Under the indirect

approach, a plaintiff must establish a *prima facie* case of retaliation by offering evidence of the following: (1) that she was engaged in a protected activity; (2) that she was subject to an adverse employment action; (3) that she performed her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action. *Id.* at 759.

Ms. Chaib's retaliation claim fails because she has not presented sufficient evidence that she suffered an adverse employment action. Ms. Chaib contends that after she complained of discrimination the State retaliated against her, and failed to take appropriate action; which would have been to transfer her out of the hostile work environment at Pendleton and send her to CIF. Importantly, when Ms. Chaib applied for the position at CIF, she did not put IDOC on notice that her request for transfer was due to a hostile environment at Pendleton. Instead, when asked on the interview form why she wished to transfer, she stated only that she "has not received opportunity to be an asset--looking for change". Ms. Chaib also contends that not getting the position at CIF was an adverse employment action because the CIF position was a more desirable job with less serious offenders. This argument fails because failure to transfer to a similar assignment is not an adverse action and an employee is not entitled to a perfect work environment. When viewing the facts in the light most favorable to Ms. Chaib, she has not presented sufficient evidence that she suffered an adverse employment action. Further, Ms. Chaib has not shown that when she was disciplined, she was performing up to her employer's legitimate job expectations. Thus, her retaliation claim fails, and the Court concludes that the State is entitled to summary judgment with respect to Ms. Chaib's retaliation claim.

F.      **Constructive Discharge**

Lastly, Ms. Chaib claims she was constructively discharged.  "To show that a hostile work environment resulted in constructive discharge, the plaintiff must show that the working conditions were so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign."  *Neal v. Rock-Tenn Co.*, No. 1:03-cv-0801, 2005 WL 1939955, at *7 (April 20, 2005).  Constructive discharge has been found where plaintiff's boss brandished a pistol and held it to plaintiff's head and constantly made racist remarks.  *Taylor v. Western & S. Life Ins. Co.,* 966 F.2d 1188, 1191 (7th Cir.1992).  The Seventh Circuit also found constructive discharge where an employer packed an employee's office contents and moved it to storage, disclosed to the employee a plan for her termination and created a general environment hostile to the employee's religious beliefs.  *EEOC v. Univ. of Chicago Hosps.,* 276 F.3d 326, 332 (7th Cir.2002).  Here, Ms. Chaib has not raised a reasonable inference that her working environment at Pendleton was so intolerable that a reasonable person would have felt compelled to resign.  Upon request, Ms. Chaib was granted FMLA by her employer and while on leave tendered a letter of resignation.  As discussed previously, the Court found that Ms. Chaib did not raise a genuine issue of material fact as to whether she was subjected to a hostile work environment in violation of Title VII.  The Seventh Circuit has stated "the working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment."  *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004).  Further, Ms. Chaib has not shown that she tried to resolve her workplace problems with her employer before she resigned and an employee who quits without giving the employer a reasonable chance to work out a problem has not been constructively discharged.  See *Hamilton v. RDI/Caesars Riverboat Casino LLC*, 179 F. Supp. 2d 929, 940 (S.D. Ind. 2002).  Because Ms. Chaib has not presented a triable

issue on her hostile work environment claim, it follows that Ms. Chaib's constructive discharge claim also fails.   Accordingly, the State is entitled to summary judgment on Ms. Chaib's constructive discharge claim.

### IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** the State's Motion to Strike Plaintiff's Surreply (Dkt. 82) and the State's Motion for Summary Judgment (Dkt. 54) is **GRANTED.**

**SO ORDERED.**

Date: _____03/01/2013_____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@cgglawfirm.com

Laura Lee Bowker
OFFICE OF THE INDIANA ATTORNEY GENERAL
laura.bowker@atg.in.gov

Corinne T.W. Gilchrist
OFFICE OF THE INDIANA ATTORNEY GENERAL
corinne.gilchrist@atg.in.gov